without his input. Please call the case. 10187 Robert J. Napleton v. Great Lakes Bank For Napleton. Julie Egan, EGAN Good morning, Your Honors. Karen Lederer, L-E-D-E-R-E-R, of Golana Christy, for Great Lakes Bank. Very good. We've read the briefs. We've looked at the pertinent portions of the record. It's a very straightforward case. But it still behooves you to get your strongest case first, the strongest point first, I should say. You have 15 minutes to decide, and we're in no rush, so take your time. Any time you're ready, Ms. Egan. Thank you. If it's necessary, I'd like to reserve time for rebuttal. Sure. So this is an appeal, as you know, from an order dismissing the cause of action pursuant to 619. The bank asserts that they have a contract that says that if you don't report an unauthorized signature within 30 days, that you have no claim against the bank. But this result does not comport with Illinois law and allows the bank to unilaterally disclaim all liability for its failure to act in good faith and ultimately shifts the burden to the customer. The UCC allows amendments with the caveat that any amendments must be done in good faith and with fair dealing between the parties. For example, under subparagraph C, 4406 subparagraph C, the UCC permits you to amend the reasonable time, and in this case it was amended to 30 days, which the courts have upheld as a reasonable time. But what it does not allow a party to do is to completely absolve itself of any liability. And the bank's addition of this caveat that if you fail to notify us, you'll have no claim against us, that's exactly what it does. Well, you just said that the courts have upheld the 30 days. Can you cite a court case for the proposition that when they've upheld the 30 days as barring possible recovery, that they agreed with your theory of the case that damages is not included in that being barred? Unfortunately, no, Your Honor. There is not a lot of case law in this area. This, I think, is truly a case of first impression. Well, I agree with you. Certainly in Illinois, it's absolutely a case of first impression, which is the oddest thing since we're a huge state. Now, both sides cite a case called Reliance. And, frankly, under our rules, and I'm being no criticism of either side, you're really not supposed to be able to do that since it's non-presidential. But in Reliance, they then refer to a case called Stowall from Minnesota. And for whatever reason, Minnesota has had many, many cases just like this. And New York has had many, many cases like this. So I suggest that while it is a first impression in Illinois, it's really been cited lots of times elsewhere. If you look at UCC of Illinois, which is Chapter 26, at 4-103A, it reads, the effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care. And you're not alleging lack of good faith or failure to exercise ordinary care, are you? I think that's an issue that would need to be decided by the trial court. I think that's what the purpose of the evidentiary hearing would be, that our argument is that that failure to notify within 30 days or you're completely barred from bringing any claim is overreaching the spirit of the UCC. That the UCC provides that the trial court would then listen, as the comments mention, listen on a case-by-case basis to the facts of the case. And it may be that there is some issue that allows the customer, even though they didn't meet the 30-day requirement, to recover some or all of the funds that were distributed. Would you agree that if Mr. Napleton had found the discrepancy within 30 days, or after he gets his statement, that whether or not the bank lost the money, was unable to recover it, that would be their tough luck? Mr. Napleton wouldn't be in the clear. He would be in no way responsible for that $7,500. That is true. That's under the UCC and pursuant to the contract, if it was within 30 days. So going the other way, accepting your argument and saying we should impose this on every bank in Illinois, or banks that do business in Illinois, taking it that we are going to impose an obligation on banks, that even after the 30 days is up, however long it is, whether it be in this case roughly four months or four years, however it comes up, that it will be the bank's burden to show that they were harmed, in the sense of being unable to recover the money from the forger, as a result of the delay. That's what we should hope. I think that's exactly right. And there are safeguards under the UCC to prevent it from going four years. Subparagraph F specifically limits it to a year. Unfortunately, the way the contract is drafted, it limits it to 30 days. That's it. You have 30 days. You don't even have the year contemplated by the drafters of the UCC. Well, let me know. I'd suggest to you, just in a common sense, how much sense does it make to have a bank on a hook for a year, when they are kind enough to send you an account and say, by the way, here's your statement, here's your check you wrote this month. It's a reasonable time period. I suggest a year is probably the limit. It's not so bad. But go ahead. You had asked about a case. I did actually discover in preparation for this argument a case out of Pennsylvania. It's the Eastern District of Pennsylvania that speaks to this. Do you have a site? I do. It's 522 F-Sub 414. The case is CUMIS Insurance Society versus Girard Bank, that's C-U-M-I-S, and Girard is G-I-R-A-R-D. Okay. And that's very similar to this instance, where the account agreement says essentially the same thing. And the court determined that because the contract doesn't define any permissible standards, it says 30 days or you have no claim. That exculpates the bank from liability for their lack of reasonable care. It's saying that regardless of the reason that this check was paid out, it could have been the bank's negligence, it could have been through no fault of either party, but if it's 30 days have gone and you have not reported it, you have no claim against the bank. Well, I read your briefs to mean that your concern was the second part of the test for a bank's liability in that they have to show damages, that they were damaged as a result of your client's failure. No, their bank customer's failure. I don't recall seeing anything in the briefs about it being a problem with the standard of care or good faith. Am I mistaken? There is some reference to it in our reply brief, and I think we got to that through the analysis of getting through this UCC code. Right, yes, that's how it works. And I think ultimately that would be the issue for the trial court, would be under subsection D1, where, yes, there was a failure to report within 30 days, but the court then has to hold an evidentiary hearing to see if, in fact, the bank's sustained a loss because of that failure to report. If there had been some reason, some way that the bank could have recouped their funds from either the presenting bank or perhaps the individual for someone who was in banks at the Great Lakes Bank. If I can ask you, then, was this raised in the trial court? Well, it was dismissed summarily on a motion to dismiss, and there was no hearing regarding any evidentiary. It was specifically regarding the fact that there was a provision in the contract that said if you fail to report within 30 days, you have no claim against us. Okay. Anything else? I just want to go a little bit into the public policy of determining if this is valid, and I think to allow the bank to contractually exculpate itself from any consequence of its own negligence or lack of good faith, as they've done here, it's the exact opposite to what the current legislatures are enacting in terms of consumer protections. Regardless of the reason that the customer failed to report it, maybe they didn't even get their statement. We all know how the mail service works. Whose burden is that, right? Maybe Mr. Naples would know if he got it or not. There's no question here in the pleadings as to whether he got it. Or not. You know, attorneys know how quickly 30 days runs, and so, you know, you may think to yourself, hmm, I didn't get my bank statement this month, but, you know, whose fault is that at that point when you don't receive it? I mean, the receiver generally, if I don't get a bank statement, I don't know where's my bank statement. What did my wife do to me? Or if she's the other way around in the courthouse, I can assure you. But go ahead. You were on public policy. I would just say that, you know, according to the bank's contract, it limits any recovery. There is no consumer protection whatsoever in their contract. That they're allowed 30 days, and as you pointed out, that they would automatically recover it. But failure to report it within those 30 days, and they have no recourse whatsoever, none, regardless of the reason, regardless of whether or not the bank can show that the loss was as a result of the failure to notify. There's no safeguards, no outline whatsoever of how the bank should proceed at that point. Does the record reflect who might be responsible for this forgery, who made the $7,500? I don't believe it does. I think there is a copy of the check in there that shows who it was paid to, but I think that's all the information that we have. Okay. I mean, the vast majority of it is employees of the check writer. Well, I would point out this is a personal account of Mr. Nagleton. And so, you know, hopefully it's only he or his wife that are. Sorry. Right. Right. So, in conclusion, I would just say briefly that I think there was a valid cause of action that Mr. Nagleton stated, and that the trial court dismissed this claim based on the contract that impermissibly limits the bank's liability after the 30 days. And the UCC requires good faith and fair dealing between the parties. The bank has contractually rendered any consumer protections under 4406 meaningless and absolved itself from all liability. That's patently unreasonable. So I would request that the court reverse the ruling of the trial court and remand this case for an evidentiary hearing regarding the allegations of the complaint. Thank you, Ms. Egan. Ms. Lederer. I'm sorry. Ms. Lederer. Ms. Lederer. Good morning, Your Honors. May it please the court, I represent the Great Lakes Bank, and the trial court properly dismissed this complaint because of the admissions that Mr. Nagleton made in his pleadings. Those admissions include that the account is governed by the account agreement and the monthly statement, that the account agreement and the monthly statement each provide 30-day reporting periods in writing, each of them. Mr. Nagleton admits that the allegedly unauthorized check appeared on his November 2007 monthly statement, and he admits that he did not review his November statement until March of 2008. And under the weight of those admissions, the trial court had little choice but to dismiss the complaint. The evidentiary hearing that Mr. Nagleton seeks is a complete waste of time and resources by the parties and the trial court, because after four months, first, the parties contractually agreed that 30 days is the amount of time. The obligation is on the account holder to review their statement and talk to the bank if there's a problem, and they have contractually agreed that that is how the party's relationship will be governed. Second, after four months, the bank's loss as a result of the delay is obvious. They cannot go back through the normal banking channels. And, in fact, there is some authority from the Illinois State Supreme Court that suggests that that loss is presumed. There doesn't need to be any evidentiary hearing. Where was that? That is actually First State Bank versus First National Bank of Canton, Illinois Supreme Court, 1924. I actually ran across that in preparing for today's hearing as well. Okay. That wasn't an abbreviation. It was not. I just found it. That's why I bring it up. I just found it. I'm not mad. Well, what's the site? I'm sorry. It is Illinois, 145 Northeast, 382. And what's the name of it? First State Bank versus First National Bank of Canton. What year was it? 1924. But it's never been, I mean, it's pre-code, but it's never been overruled. It's never been modified in any way. The policy that it talks about is still good today. While the Reliance Insurance case is not precedential in this matter, it does build its argument on all Illinois law. Judge Cannelli at the district court followed Illinois cases step by step by step. He, in fact, recited 4406D1, which is the specific provision that Mr. Napleton relies on, and its very next sentence was, parties may vary the effect of the code by agreement. He cites Mitchell versus the Mitchell-Bewick case. It's a second district Illinois case. He then goes on to say Illinois courts consistently enforce account agreements as part of the contract between a bank and its customer. It is a fundamental principle of banking law that the relationship is created and regulated by the express or implied contracts between them. That's Szymanski versus First Bank of Danville, another Illinois case. The contract between the bank and the customer integrates several documents. He cites Suburban Bank of Hoffman Schomburg versus Versus, an Illinois Supreme Court case. So while Reliance Insurance itself is not precedential, it is built on Illinois law. It is step by step by step constructed from principles familiar to Illinois courts. Following this Illinois authority, Judge Canelli concludes that the parties here modified their obligations under the UCC. The account holder agreed to shoulder the responsibility of reviewing statements within 30 days and held, because it is undisputed that the account holder failed to report the unauthorized signatures within 30 days, the bank is entitled to summary judgment. There's no mention of needing to prove the customer's failure caused this loss. There's no trial. There's no evidentiary hearing. An outstanding motion on a plainly disputed issue of fact was denied as moot. It's summary judgment as a matter of law. It's a fundamental if-then proposition. If they don't report within 30 days, then they don't have a claim against the bank and they are entitled to summary judgment. Mr. Napleton's argument essentially seeks to repudiate the fundamental principle of banking law represented by the account agreement and other contractual agreements. If this one subsection of the UCC in Illinois really, truly had the effect of eviscerating contractual agreements, wouldn't some Illinois court have held that somewhere at some point over the last 60 years? Well, we've had election law going for, I don't know, 18, 14. And I probably know court is, at least our Supreme Court, has not weighed in on the idea of what residency means. So I'm astonished at these things every day, frankly. I completely agree. And while there are X number of elections that courts have probably been exposed to, how many checks flow through the system every single day? How many unauthorized signatures has the banking establishment had to deal with? If this were truly a bank evidentiary burden, wouldn't it have been dealt with already? Well, again, the fundamental part of your argument is, in my experience of only 14 years up here, there's almost no basis because nobody writes on these things. There are great gaps in civil law, and I don't know why there is. We know about a $5 fine in criminal law. It's been fought over for years. But in civil law, billions of dollars, we don't understand commerce. I don't know what the problem is. But also, wouldn't there be a case on your side? And so it's to say there are no cases on their side and it wouldn't have happened. Well, there are no cases on your side, other, at least in Illinois. And we're a pretty big state. I'd suggest there are cases in Minnesota and in New York, but not here. So go ahead. All right. Well, it is also true, and it's a fundamental principle of Illinois law, that contracts allocate risks. That's what they do. Parties are allowed to do that. There's nothing wrong with that. There's nothing inherently disputable or illogical or subversive about it. Contracts allocate risks. Parties to contracts get to do that for themselves. And Napleton's argument would have this court make brand new law here, reversing well-established rules governing banks and their customers, inject uncertainty and risk into an otherwise clear contractual relationship, and undermine the principle that the risk of loss should be on the party in the best position to avoid it. Mr. Napleton was plainly in the best position to have avoided this loss. He failed to do it. He does not, in any of his moving papers, certainly not in the trial court, or anything that we had an opportunity to respond to, accuse the bank of unfair dealing. This is all a brand new argument. But he accused the bank of lack of good faith or failure to respect ordinary people. No. That's new today. Okay. The other point from the Reliance case that I think is important is its citation to Illinois law saying that Illinois courts have held that parties can limit remedies and damages for breach of their agreement if their agreement so states. And that's precisely what the account agreement does. It limits the remedy. Your remedy is getting your money back when you notify the bank in 30 days. Your remedy for not notifying the bank in 30 days is that you don't have a claim against the bank. If you want to go pursue your forger, by all means, go do that. But don't sit on your rights. Don't sit on your information for four months and expect the bank to ensure that your check is redeposited into your account. That is an unfair shift of the risk of loss onto the party in the least position to avoid it. Is it clear that the account agreement provides that if the forged check is caught by the account holder within 30 days, the bank will always pay it? That there's no fight over it? The account agreement does not specifically say a forged check reported to us within 30 days will be reimbursed. It does not say that. It is simply bank policy. It is simply bank policy. Is that in the record? Does it say? I'm sorry, ask the question. Is it in the record? Is bank policy in the record? The bank policy of always paying within 30 days. Assuming it's not crazy like a million dollars drawn on my account. I don't believe that the point was addressed. Okay. It generally wouldn't be. Let's see. I have not had an opportunity to look at the Kumis insurance case. That case is new today. And the lack of good faith. It doesn't have a chance to look at Canton Bank. So it's a wash. Don't worry about it. So unless you have other questions, the bank is okay. The bank is good. Thank you very much. Thank you. Ms. Egan, briefly. Thank you. Very briefly, I have just a couple things that I want to bring up. First is the Reliance case. I think that is indicative of the analysis that needs to occur here. The issue in Reliance initially was, was there a contract between the parties? We've already conceded that there was. But the Reliance court then went that step further to say there was a contract. You were required to report it within 30 days. But you didn't, and you don't qualify for Reliance. And I believe under subsection D2, because in reviewing the facts of that case, that was a commercial, that was a contract between two commercial entities. There were 51 checks that were forged by an employee of the plaintiff's bank. So clearly in that case, the court determined that that customer was in the best interest to limit any fraud. In the best position, right? Right. Thank you. But I would also point out that, as the bank said, the customers contractually agreed to this and that they've allocated the risks based upon who's best able to limit the fraud. There is truly disparate bargaining power here. The customer goes to the bank. They have no, they're not going to be able to read the account agreement and cross out the parts that they don't like. The only bargaining power they have is to go to another bank, which Mr. Napleton has banked at Great Lakes Bank for well over 30 years. So, you know, to sever that relationship is a significant step. I would point out that there are no safeguards or procedures in their contract that protect the customer. The UCC contemplates a year. You have up to a year to report the loss. And they cut it off at 30 days. I think that's a violation of good faith and fair dealing with their customers. Is Napleton still a customer? He is. It's a relationship. Finally, if the case is remanded, it's not automatic that Mr. Napleton is going to get his money back. It's for the trial of the courts to listen to all of the evidence and determine on a case-by-case basis if he's entitled to it. And I think the inquiry is not whether they could recover the loss four months later when it's reported. The inquiry is whether they could have recovered the loss had it been reported timely. And how do you prove it? That's for the bank to prove. There are certain circumstances where, as I brought up earlier, if the forger banks at Great Lakes Bank, which I don't know why he would do that, but if he did, you put a freeze on that account and then recoup whatever you've lost from his account. But finally, the bank argues that the customer is in the best position to avoid it. I think, and I'm curious to see what the panel thinks, that the UCC contemplates one freebie for every customer. That D1 says that if you have an unauthorized check, you discover it more than 30 days, if that's the reasonable time that your bank has given you to report it. That that is your opportunity. The bank has to show that your failure to report caused their loss. After that, both the bank and the customer are on notice that this is an issue, and they're both in a position to best limit it.  Well, how could the bank be aware of it until they're told it shouldn't have been honored? It would be impossible. Either they call after 30 days, each check, and say, are you correct? I mean, did you get that money? Are you actually a customer or a pal? No, I don't think that's required. I think it only arises when a customer discovers it, as Mr. Napleton did, beyond the 30 days and reports it, and then they conduct an inquiry as to could we have gotten that money back. And it doesn't require a court case. It merely requires an investigation by someone at the bank to say, you know what, we could have gotten that back through these avenues, so we're not going to refund it to you, or we think that there's negligence on both sides, so we're going to refund half of it. I think it requires the bank to take that next step, unlike they have in their agreement that says 30 days and that's it. That's how I read the UCC, so I'm curious to see how you read it. Well, thank you, everybody, for the arguments and the briefs. This case will be taken under advisement.